A-580-880<br>
Remand: Slip Op. 21-126<br>
Court No. 20-00146<br>
AR: 9/1/2017 – 8/31/2018<br>
**Public Document**<br>
E&C/OII: AM

*HiSteel Co., Ltd., and Kukje Steel Co., Ltd. v. United States*,
Court No. 20-00146, Slip Op. 21-126 (CIT September 23, 2021)

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    Summary**

The Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court) issued in *HiSteel Co., Ltd., and Kukje Steel Co., Ltd. v. United States*, Slip Op. 21-126, Court No. 20-00146 (CIT 2021) (*Remand Order*).  This action arises out of the final results in the 2017-2018 administrative review of the antidumping duty (AD) order on heavy walled rectangular welded carbon steel pipes and tubes (HWR) from the Republic of Korea (Korea).[1]  The Court remanded Commerce's:  (1) determination of a particular market situation (PMS) in the Korean market for the hot-rolled coil (HRC) input; (2) resultant application of a PMS adjustment to the cost of production (COP) for the purposes of the sales-below-cost test; and (3) PMS adjustment.  Consistent with the Court's opinion, on remand and under respectful protest, for this final redetermination, Commerce reverses its determination that a PMS distorted the COP of HWR during the period of review (POR).  Consequently, we recalculated the estimated weighted-average dumping margins for HiSteel Co., Ltd. (HiSteel) and Kukje Steel

---

[1] *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea:  Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 FR 41538 (July 10, 2020) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

Co., Ltd. (Kukje) without making a PMS adjustment to the COP. The revised weighted-average dumping margins for HiSteel and Kukje are 9.90 and 1.91 percent, respectively.

**II.      Background**

Commerce published the *Final Results* on July 10, 2020.[2] As discussed in the *Final Results*, Commerce determined that a PMS existed in the Korean market that distorted the COP of HWR and made an adjustment to the respondents' cost of HRC inputs to account for this PMS.[3]

In its September 23, 2021 opinion, the Court remanded the *Final Results* to Commerce, concluding that Commerce: (1) does not have the authority to adjust for a PMS prior to conducting a sales-below-cost test under section 773(b); (2) failed to present substantial evidence that a PMS existed in the Korean market for HRC during the POR; and (3) applied a PMS adjustment that is not supported by substantial evidence. The Court found that the plain language of the statute does not provide Commerce with the authority to adjust the COP for the sales-below-cost test.[4] Further, the Court concluded that, even if Commerce had the authority to apply a PMS adjustment prior to the sales-below-cost test, Commerce's determination that a PMS that distorted the HRC market existed during the POR based on the cumulative effect of four factors was not supported by substantial evidence.[5] Finally, the Court held that, even if Commerce's pre-cost test application of a PMS adjustment were permitted by law and the factors highlighted by Commerce substantiated the existence of a PMS, Commerce's adjustment to HRC input costs was not supported by substantial evidence.[6]

---

[2] *See Final Results* IDM at Comment 1.
[3] *Id.* at Comments 1 and 2.
[4] *See Remand Order* at 10-19.
[5] *Id.* at 19-27.
[6] *Id.* at 27-29.

Therefore, the Court remanded to Commerce its PMS determination, the resultant application of the PMS adjustment to the COP, and the PMS adjustment.

### III. Analysis

In the underlying determination, Commerce concluded that the weight of the evidence on the record of the administrative review, as cited in the *Final Results*, demonstrated the existence of a PMS which distorted the cost of HWR with respect to the cumulative effect of: (1) Korean subsidies on the HRC input into HWR; (2) Korean imports of HRC from China; (3) strategic alliances between Korean HRC and HWR producers; and (4) distortions in the Korean electricity market.[7] Commerce further concluded that it had the authority to apply a PMS adjustment before conducting a sales-below-cost test.[8] In the *Final Results*, Commerce quantified the impact of the PMS in Korea by making an upward adjustment to HiSteel's and Kukje's reported HRC costs, basing that adjustment on the petitioner's regression analysis, with certain adjustments adopted by Commerce.[9]

The Court, however, held that Commerce does not have the authority to apply a PMS adjustment for purposes of the sales-below-cost test.[10] The Court further held that Commerce failed to substantiate its PMS determination with substantial evidence.[11] According to the Court, "Commerce has not identified substantial evidence on the record suggesting that any of the four factors constitute a PMS individually or cumulatively."[12] Finally, the Court concluded that Commerce's PMS adjustment to HRC input costs was not supported by substantial evidence.[13] Specifically, the Court found that the regression model that Commerce relied upon to make the

---

[7] *See Final Results* IDM at Comment 1.
[8] *Id*.
[9] *Id*. at Comment 2.
[10] *See Remand Order* at 10-19.
[11] *Id*. at 19-27.
[12] *Id*. at 27.
[13] *Id*. at 27-29.

3

PMS adjustment used data from 2017, when two-thirds of the POR fell within 2018; thus, the adjustment was neither reasonable nor supported by substantial evidence.[14]

Consistent with the Court's opinion, and under protest,[15] we are reversing our determination that a PMS distorted the COP of HWR during the POR. Therefore, we have recalculated HiSteel's and Kukje's weighted-average dumping margins without a PMS adjustment to the COP for the sales-below-cost test.

## IV. Interested Party Comments

On November 16, 2021, Commerce released the draft results of redetermination to all interested parties and invited parties to comment.[16] On November 23, 2021, we received comments from Nucor Tubular Products Inc. (Nucor Tubular).[17] We address the party's comments below.

*Nucor Tubular Comments*

- The Court's holding that Commerce does not have the authority to apply a PMS adjustment before a sales-below-cost test inappropriately relied on *Dong-A Steel v. United States*, where the Court relied on *Thomas v. Nicholson,* a case about the canons of statutory construction, to reach its conclusion rather than relying on *Chevron* deference.[18]

---

[14] *Id.* at 28-29.
[15] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003) (explaining Commerce's right to reach a remand redetermination under protest).
[16] *See* Draft Results of Redetermination Pursuant To Court Remand, *HiSteel Co., Ltd., and Kukje Steel Co., Ltd. v. United States*, Consol. Court No. 20-00146, Slip Op. 21-126 (CIT September 23, 2021), issued on November 16, 2021.
[17] *See* Nucor Tubular's Letter, "Certain Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Comments on Draft Results of Redetermination," dated November 23, 2021.
[18] *Id.* at 2 (citing *Remand Order* at 12-14; *Dong-A Steel v. United States*, 475 F. Supp. 3d 1317, 1338-41 (CIT 2020); *Thomas v. Nicholson*, 423 F.3d 1279, 1284 (Fed. Cir. 2005)).

> The Court's reasoning here is contrary to *Chevron* and ignores Federal Circuit jurisprudence.[19]

- The Court did not substantively engage Commerce's arguments on the application of a PMS adjustment to a respondents' costs for the sales-below-cost test; therefore, Commerce should reassert its arguments that Commerce can adjust costs where they are affected by a PMS.[20]
- Commerce should address deficiencies identified by the Court rather than abandoning the finding of a PMS.[21]  Commerce's PMS finding in the underlying proceeding was supported by substantial evidence, and thus Commerce should provide further analysis to explain its affirmative determination in light of the Court's concerns.[22]

*Commerce's Position:*

Despite its disagreement with the Court's holding, Nucor Tubular fails to offer analysis or to point to record evidence that would allow Commerce to overcome the Court's objections. Although Nucor Tubular argues that the Court's decision is erroneous and that Commerce should continue to apply a PMS adjustment, the Court expressly concluded that "Commerce cannot apply a PMS adjustment prior to conducting a sales-below-cost test when calculating home market value" and that "even if Commerce could have applied a PMS adjustment in this case, it did not provide substantial evidence that a PMS distorted the market for HRC during the POR."[23] Commerce is obligated to take action on remand that is consistent with the Court's remand order.

---

[19] *Id*. at 3 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984); *Van Hollen v. Fed. Election Comm'n*, 811 F.3d 486, 493-94 (D.C. Cir. 2016); *Catawba Cnty. v. EPA*, 571 F.3d 20, 36 (D.C. Cir. 2009); *Meeks v. West*, 216 F.3d 1363, 1366 (Fed. Cir. 2000); *Apex Frozen Foods Priv. Ltd. v. United States*, 862 F.3d 1337, 1344 (Fed. Cir. 2017); and *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363-65 (Fed. Cir. 2015)).
[20] *Id*.
[21] *Id*. at 4-6
[22] *Id*. at 4-7 (citing *Final Results* IDM at Comment 1).
[23] *See Remand Order* at 30.

Accordingly, under respectful protest,[24] we continue to calculate HiSteel's and Kukje's margins without regard to a PMS adjustment for these final results of redetermination.

## V. Final Results of Redetermination

We recalculated HiSteel's and Kukje's estimated weighted-average dumping margin without making the PMS adjustment to the COP. As a result, HiSteel's and Kukje's estimated weighted-average dumping margins are 9.90 and 1.91 percent, respectively.[25] Because the weighted-average dumping margins for HiSteel and Kukje are different from those in the *Final Results*, we intend to issue a *Timken* notice with the amended final results should the Court sustain these final results of redetermination.

12/15/2021

X _____

Signed by: RYAN MAJERUS

_____
Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties of the
  Assistant Secretary for Enforcement and Compliance

---

[24] *See Viraj Group*, 343 F.3d at 1376.
[25] *See* Memoranda, "Margin Calculations for HiSteel Co., Ltd. (HiSteel) Pursuant to Draft Results of Redetermination"; and "Margin Calculations for Kukje Steel Co., Ltd. (Kukje) Pursuant to Draft Results of Redetermination," both dated November 16, 2021.