Slip Op. 22-129

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HISTEEL CO., LTD., and KUKJE STEEL CO., LTD.,<br>   Plaintiffs,<br> v.<br>UNITED STATES,<br>   Defendant,<br> and<br>NUCOR TUBULAR PRODUCTS INC., and ATLAS TUBE AND SEARING INDUSTRIES,<br>   Defendant-Intervenors. | Before: Gary S. Katzmann, Judge<br>Court No. 20-00146 |

**OPINION**

[Sustaining Commerce's remand results.]

Dated: November 23, 2022

Jeffrey M. Winton, Winton & Chapman PLLP, of Washington, D.C., for Plaintiffs HiSteel Co., Ltd. and Kukje Steel Co., Ltd.

Kara Marie Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Claudia Burke, Assistant Director. Of counsel on the brief was Vania Wang, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Robert E. DeFrancesco, III, Alan H. Price, Enbar Toledano and Jake R. Frischknecht, Wiley Rein, LLP, of Washington, D.C., for Defendant-Intervenor, Nucor Tubular Products, Inc.

Roger B. Schagrin, Elizabeth J. Drake, Christopher T. Cloutier, Luke A. Meisner, William A. Fennell, and Kelsey M. Rule, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor, Atlas Tube, a division of Zekelman Industries, and Searing Industries.

Katzmann, Judge:  Before the court is the U.S. Department of Commerce ("Commerce")'s remand results filed pursuant to this court's order in <u>HiSteel Co. v. United States</u>, 45 CIT __, __, 547 F. Supp. 3d 1233 (2021) ("<u>HiSteel I</u>") in connection with Commerce's final determination in the 2017-2018 administrative review of the antidumping duty ("AD") order on heavy walled rectangular welded carbon steel pipes and tubes ("HWR") from Korea.  <u>See</u> Final Results of Redetermination Pursuant to Ct. Remand, Dec. 15, 2021, ECF No. 68-1 ("<u>Remand Results</u>"); <u>see also</u> <u>Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea: Final Results of Antidumping Duty Administrative Review</u>, 85 Fed. Reg. 41,538 (Dep't Commerce July 10, 2020), P.R. 402 ("<u>Final Results</u>").

The court presumes familiarity with the facts and legal frameworks underpinning this case as set out in its previous opinion, <u>see</u> <u>HiSteel I</u>, and now recounts only that which is relevant to the court's review of the <u>Remand Results</u>.  For the following reasons, Commerce's <u>Remand Results</u> are sustained.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii).  <u>See, e.g.</u>, <u>Foshan Shunde Yongjian Housewares & Hardwares Co., Ltd. v. United States</u>, 40 CIT __, __, 172 F. Supp. 3d 1353, 1356 (2016).  "For administrative reviews of antidumping duty orders, the court sustains Commerce's 'determinations, findings, or conclusions' unless they are 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"  <u>Id.</u> (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).

## DISCUSSION

In the underlying administrative review, Commerce determined that Korean producers of HWR were selling the subject merchandise into the United States at prices below fair value and

Court No. 20-00146

Page 3

imposed antidumping duties on mandatory respondents[1] HiSteel Co., Ltd. ("HiSteel") and Kukje Steel Co., Ltd. ("Kukje") (collectively, "Plaintiffs") of 26.20 and 35.11 percent, respectively.  See Final Results at 41,539; see also 547 F. Supp. 3d at 1237.  To determine these duties, Commerce calculated the difference between export price and normal value, with normal value here derived from home market sales of comparable goods.[2]

In deriving this normal value, because Commerce assessed that some home markets sales were made at prices below the cost of production, Commerce conducted a "sales-below-cost test" to disregard such sales from the normal value.  See 19 U.S.C. § 1677b(b)(1).  Moreover, because Commerce assessed that a "particular market situation" ("PMS")[3] existed with respect to Korean hot-rolled steel coils ("HRC") -- an input of HWR -- that distorted the market and thereby prevented a proper comparison between normal value and export price, Commerce adjusted

---

[1] In antidumping duty investigations or administrative reviews, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f-1(c)(2), which provides:

> If it is not practicable to make individual weighted average dumping margin determinations [in investigations or administrative reviews] because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—
>
> (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
>
> (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

[2] Section 1677b of 19 U.S.C. outlines three possible ways to calculate normal value: (i) looking to sales of comparable goods in the home market, 19 U.S.C. § 1677b(a)(1)(B)(i); (ii) looking to sales of comparable goods in a third country, id. § 1677b(a)(1)(B)(ii); or (iii) calculating the product's "constructed value" by summing the costs of production and processing of the product as well as the costs incurred by the exporter to export and sell the product, id. § 1677b(a)(4), (e).

[3] A "PMS" exists when "the costs of materials and fabrication or other processing of any kind" of a product "does not accurately reflect the cost of production in the ordinary course of trade."  19 U.S.C. §1677b(e)(3).

Court No. 20-00146

upward the cost of HRC prior to conducting the sales-below-cost-test. HiSteel I, 547 F. Supp. 3d at 1240–41.

Before the court in HiSteel I, Plaintiffs HiSteel and Kukje challenged Commerce's calculation of their respectively assigned antidumping duties, specifically alleging that Commerce does not have the authority to adjust for a PMS prior to conducting a sales-below-cost test when calculating normal value based on home market sales. This court agreed, explaining that although 19 U.S.C. § 1677b authorizes Commerce to undertake a PMS adjustment when calculating normal value based on constructed value, the statute does not similarly authorize Commerce to adjust for a PMS prior to conducting a sales-below-cost test when calculating normal value based on home market sales. 547 F. Supp. 3d at 1245. Accordingly, on September 23, 2021, the court held Commerce's assessed antidumping duties did not accord with law, necessitating remand.[4] Id. at 1247, 1253.

On December 10, 2021, in an analogous case, the Federal Circuit declared that it is "impermissible" for Commerce to "apply a PMS adjustment to the calculation of costs of production under the sales-below-cost test" for purposes of determining normal value based on home market sales. Hyundai Steel Co. v. United States, 19 F.4th 1346, 1354, 1356 (Fed. Cir. 2021); see also id. at 1348 ("We agree with the Trade Court that the . . . antidumping statute do[es] not authorize Commerce to use the existence of a PMS as a basis for adjusting a respondent's costs of production to determine whether a respondent has made home market sales below cost.").

---

[4] In the alternative, the court held that even if Commerce was permitted by law to undertake a PMS adjustment prior to conducting a sales-below-cost test when calculating normal value based on home market sales, Commerce: (i) failed to provide substantial evidence that a PMS indeed existed in the HRC market during the period of review; and (ii) applied a calculated PMS adjustment that was not supported by substantial evidence. See HiSteel I, 547 F. Supp. 3d at 1247, 1252.

Court No. 20-00146 Page 5

Accordingly, in the case at bar, Commerce recalculated -- without making an upward PMS adjustment to the cost of HRC -- weighted-average dumping margins for HiSteel and Kukje of 9.90 and 1.91 percent, respectively on December 15, 2021.  Remand Results at 1–2.  As Hyundai Steel is decisive,[5] "[n]o party challenges Commerce's remand results."  Def.'s Resp. to Cmts. on Remand Results at 1, July 29, 2022, ECF No. 82 ("Def.'s Br."); Def.-Inter.'s Cmts. on Remand Results, July 14, 2021, ECF No. 79 ("Def.-Inter.'s Br."); Pls.' Cmts. on Remand Results, July 14, 2021, ECF No. 80 ("Pls.' Brief").  "[B]ecause Hyundai Steel is binding on this court and now final," the court agrees "it is appropriate . . . to affirm the Remand Redetermination."  Def.-Inter.'s Br. at 1.

## CONCLUSION

For the foregoing reasons, the Remand Results are sustained.  Judgment will enter accordingly.

**SO ORDERED.**

/s/   Gary S. Katzmann
Gary S. Katzmann, Judge

Dated:  November 23, 2022
New York, New York

---

[5] This court previously granted a motion to stay the proceedings in HiSteel I pending the Federal Circuit's determination on a motion for rehearing and issuance of a final disposition in Hyundai Steel, 19 F.4th 1346.  See Def.-Inter.'s Partial Consent Mot. to Stay, Jan. 4, 2022, ECF No. 70; see also Ct. Order Granting Mot. to Stay, Jan. 19, 2022, ECF No. 74 ("Ct. Order").  On March 16, 2022, the Federal Circuit denied the motion for rehearing and the period to appeal the Federal Circuit's decision expired on June 14, 2022, with no indication that any party filed a writ of certiorari with the Supreme Court.  See Joint Status Report at 4, June 14, 2022, ECF No. 78.  Consequently, parties' responses to Commerce's Remand Results were due to this court on July 14, 2022.  See Ct. Order at 1.